UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

John and Jane Doe, individually, and
on behalf of the minor child, Joseph Doe[1],

        Plaintiffs,


      v.                                                      No.: 6:24-cv-6237

McQuaid Jesuit,

                                      **Jury Trial Demanded**

        Defendant.

———————————————————————

## **COMPLAINT**

      Plaintiffs John and Jane Doe, individually, and on behalf of the minor child, Joseph Doe,

by and through their attorney, J. Morgan Levy Firm, PLLC, for their complaint against

defendant McQuaid Jesuit respectfully state:

## **INTRODUCTION**

1.   This is an action seeking declaratory, and equitable relief, as well as monetary damages,
   to redress defendant McQuaid Jesuit (hereinafter "McQuaid") violations of Title IX of
   the Education Amendments of 1972, as amended, 20 USC § 1681, et seq. ("Title IX")
   and its implementing regulations at 34 CFR § 106, et seq. ("Title IX Regulations") for
   permitting discrimination and harassment on the basis of sex and gender.

2.   This is also an action seeking declaratory, and equitable relief, as well as monetary
   damages, to redress defendant's violations of New York State Human Rights Law

---

[1] Plaintiffs are identified with pseudonyms due to the nature of this proceeding and have filed a motion to proceed
under pseudonym.

("NYSHRL") for permitting discrimination and harassment on the basis of sex and gender and failing to provide a reasonable accommodation for his disabling medical condition.

3. This is also a claim for breach of contract, estoppel and reliance, negligence and intentional infliction of emotional distress.

4. Defendant McQuaid's unlawful conduct was knowing, willful, and wanton and/or showed a reckless disregard for plaintiffs' protected rights, which has caused and continues to cause them to suffer substantial economic and non-economic damages.

5. At defendant McQuaid, the "boys will be boys" philosophy prevails over its legal obligations to prohibit sex discrimination, creating the perfect conditions for bullying, sexual harassment, and sexual predation of students by their peers to flourish.

6. Defendant's lack of concern for issues related to sexual harassment is reflected in its antiharassment policy, which, in addition to failing to conform to minimum legal standards, dedicates 441 words to the topic significantly less words than the well over 1400 words dedicated to explaining the school's dress code. *See* Exhibit 1, pgs. 21-23.

7. Furthermore, defendant McQuaid's dress code communicates its expectations its students adhere to sex stereotypes, requiring defendant McQuaid students to wear attire associated with heterosexual males and banning attire typically associated with females.

8. In example, the dress policy prohibits its students from wearing, "earrings, bracelets, nail polish, and makeup." *See* Exhibit 1*,* pgs. 21-23.

9. Because defendant McQuaid was deliberately indifferent to plaintiffs' reports of bullying and sex-based harassment, Joseph Doe suffered an exacerbation of his disabling medical condition.

10. Plaintiffs suffered significant emotional, financial, and academic injuries because of defendant's failures to appropriately respond to their reports of sexual harassment and bullying in its educational program.

11. Defendant McQuaid's failure to abide by its obligations under federal and state law to prevent and respond to reports of sexual harassment has forever and irrevocably harmed plaintiffs.

## JURISDICTION AND PARTIES

12. Plaintiffs reside in the Town of Greece, County of Monroe, State of New York.

13. Defendant McQuaid is located in the City of Rochester, in the County of Monroe and State of New York.

14. Defendant McQuaid is a private school.

15. Defendant McQuaid is a recipient of federal funds.

16. Defendant McQuaid is an "educational institution" as defined in 20 USC § 1681(c).

17. Defendant McQuaid is an "educational institution" as defined by NYSHRL § 292.

18. This court has jurisdiction over defendant McQuaid pursuant to 28 USC § 1391 in that defendant McQuaid is within Monroe County, New York State.

19. This court has subject matter jurisdiction pursuant to 28 USC § 1331 because this civil action arises under Title IX, a federal law.

20. We request this court exercise supplemental subject matter jurisdiction over plaintiffs' New York State law claims pursuant to 28 USC § 1367 because these claims are part of the same claim or controversy as plaintiffs' Title IX claims.

21.   Venue is proper in the Western District of New York pursuant to 28 USC § 1391 (b) (2)
      because a substantial part of the events or omissions giving rise to this claim occurred in
      this district.

## BACKGROUND FACTS AND CIRCUMSTANCES

22.   Defendant McQuaid describes itself as an institution that develops its graduates to be
      intellectually competent, loving, religious, open to growth, and committed to justice. *See*
      Exhibit 1, pg. 5.

23.   Defendant McQuaid promises its students it will not tolerate sexual harassment through
      its adoption, publication, and distribution of its Student Handbook (the Handbook).

24.   A copy of the Handbook in effect at defendant McQuaid during Joseph Doe's enrollment
      is attached at Exhibit 1. *See* Exhibit 1, pgs. 23-24.

25.   The Handbook defines the term "sexual harassment" in a manner inconsistent with
      New York State Human Rights Law and Title IX.

26.   The Handbook does not identify any name or contact information for a Title IX
      Coordinator at the institution.

27.   Upon information and belief, McQuaid does not have a Title IX Coordinator.

28.   Upon information and belief, McQuaid mistakenly believes it does not need to comply
      with Title IX because it is a private school.

29.   According to "USAspending.gov" (the official open data source of federal spending
      information, including information about federal awards such as contracts, grants, and
      loans) McQuaid received multiple direct payments from the Federal Communications
      Commission during the period Joseph Doe experienced and reported harassment. *See*
      Exhibit 2, pg. 1.

**Plaintiffs' Experience with Defendant McQuaid**

30.   Plaintiffs John and Jane Doe paid tuition and fees to defendant McQuaid in exchange for

its promise to educate their son, Joseph Doe.

31.   Plaintiffs chose defendant McQuaid for Joseph Doe's education because

defendant McQuaid marketed itself as "a college preparatory school that inspires young

men to realize their God-given gifts through the pursuit of excellence in all things,

service to others, and a life-long commitment to justice." *See* Exhibit 1, pg. 4.

32.   Joseph Doe began his educational experience at defendant McQuaid in or around August

2021 at the start of his eighth (8th) grade academic year.

33.   Joseph Doe quickly discovered a day in the life of a defendant McQuaid student was in

no way designed to "foster the pursuit of excellence or a lifelong commitment to justice"

as plaintiffs had been promised by defendants.

34.   Joseph Doe noticed female teachers were treated with significantly less respect than male

teachers; a fact one of Joseph Doe's ninth grade female teachers conceded to her class.

35.   While in classes taught by female teachers, Joseph Doe observed students:

    A.  frequently talking during instruction, in complete disregard to the teacher's

      efforts.

    B.  throwing items around the classroom.

    C.  talking back to or arguing with teachers.

    D.  openly playing games on their iPads.

36.   The behaviors described in paragraph 35, above almost never occurred in male teachers'

classrooms.

37.   Joseph Doe also witnessed his peers:

A.  cheating on assignments in front of teachers by, for example, asking for homework from other students copying other students' homework, and using "Spark Notes" while working on tests

B.  vandalizing newly renovated school bathrooms with graffiti

C.  shoving and pushing younger students in lunch lines (under the guise of "senior privileges")

D.  openly stealing from the school and from other students

E.  regularly engaging in verbal abuse and vulgar language referencing race, sex, and sexual orientation by, for example, mocking students for being "gay" or supporting of gay rights, labeling students (including Joseph Doe) "gay" to express general dislike for them, signing students up in the Pride Alliance[2] involuntarily and mocking them for their apparent participation in the group,

F.  sexualizing female teachers and other women by making "smash or pass" comments about them and making sexual comments in connection with one teacher's apparent pregnancy

E.  overtly engaging in harassment on the basis of race and perceived national origin towards peers, including, but not limited to, remarking/taunting a Black student when lights were turned off by shouting "where did X [a Black student] go?" on several occasions, on a bus trip, when fireworks were visible outside the bus window, students insulting Student 1, a friend of Joseph Doe and a person of

---

[2] McQuaid's website reports the Pride Alliance is "Open to all students, this is where you can discuss issues relating to gender and identity."  https://mcquaid.org/student-life/clubs-and-activities/, last visited April 23, 2024.

middle eastern descent, asking if he liked explosions and laughing at him when viewing fireworks.

F.  making derogatory gestures towards another student, Student 2, while pulling his eyes back so they were slanted, because Student 2 is a person of Asian heritage.

G.  calling Joseph Doe a "sodbuster", a term the Urban Dictionary defines as "A dirty and lowly human scum, usually someone who does something that makes one cringe"[3]

H.  making demeaning comments to Joseph Doe regarding Joseph Doe's body size, calling him "skeleton" and "skinny"

38.  Joseph Doe observed other defendant McQuaid students responding to such events described in paragraph 37 above by either ignoring its occurrence or joining in on the abuse.

39.  In short, Joseph Doe learned the culture at defendant McQuaid was one that permitted and accepted harassment and discrimination as routine.

40.  When Joseph Doe reported his peer Student 3's behavior towards him (calling him "sodbuster") and Student 2 (gesturing with his eyes pulled in a slant) to Dr. Parks and Ms. Gorton in fall 2022, very little was done.

41.  Dr. Parks thanked Joseph Doe for his report and told Joseph Doe defendant McQuaid was already aware of Student 3's comments as other students had made similar reports.

42.  Upon information and belief, when one of Joseph Doe's peers, Student 4, also reported Student 3's harassing him at the end of 8th grade, defendant McQuaid's response was to tell Student 4 to stand up for himself.

---

[3] https://www.urbandictionary.com/define.php?term=sodbuster last accessed April 22, 2024.

43. Upon information and belief, the only thing ever done by defendant McQuaid to redress Student 3's comments was to assign Student 3 to JUG (detention).

44. When Joseph Doe would attempt to speak during 8th grade science class, his peers including Student 5 and Student 6 would yell at him to shut up, directly in front of the teacher.

45. The teacher's response to this was to ignore the remarks and abuse directed at Joseph Doe.

46. Female teachers who tried to approach sexist, racist and other behaviors didn't last long at defendant McQuaid.

47. In example, Ms. Rita Gupta attempted to reprimand disruptive and offensive students, but was soon removed from her teaching position.

48. Upon information and belief Ms. Gupta was made to leave her position after the offending students started rumors Ms. Gupta was racist.

**Sexual Harassment and Assault**

49. In October of Joseph Doe's ninth (9th) grade year, several of his defendant McQuaid classmates, Student 7 and Student 8, began sexually harassing Joseph Doe during their shared technology class, taught by a Mr. Simkins.

50. Mr. Simkins cultivated an informal and disruptive environment, wherein he held little authority, permitting students to call him "DaddySims" and generally act out.

51. The lack of supervision in this class allowed Student 7 and Student 8's harassment of Joseph Doe to escalate.

52. Student 8 and Student 7 preyed on and attacked Joseph Doe.

53.  Student 7's disruptive behavior included his getting down on his hands and knees and barking like a dog at Joseph Doe in front of Mr. Simkins, without the behavior being addressed.

54.  During this class, Student 7 also began approaching Joseph Doe, placing his hand on Joseph Doe's shoulder, and talking to him in a salacious tone.

55.  In or around late fall, early winter 2022, Student 7's approaches increased in invasiveness with Student 7 touching, not just Joseph Doe's shoulder, but also Joseph Doe's inner thigh and groin.

56.  Upon information and belief other defendant McQuaid students have a video of one or more of these encounters on their phones.

57.  Mr. Simkins must have been aware of these encounters; or else have been ignoring, completely his supervisory obligations.

58.  During technology class in or around March 2023, Joseph Doe, fed up with Student 7's inappropriately touching him, shoved Student 7 away, telling Student 7 he needed to stop, or Joseph Doe would punch him.

59.  After this encounter, Student 7 made another effort to violate Joseph Doe before he eventually stopped approaching Joseph Doe in technology class.

60.  Around the same time as encounter described in paragraph 58, Joseph Doe encountered Student 7 at his locker and asked why he was continuously harassing him.

61.  Student 7 replied he was harassing Joseph Doe because another student, Student 8, paid him to do so, offering him a few dollars or snacks at lunch time in exchange for his harassment.

62.  Towards the end of March 2023 Student 7 stopped trying to approach Joseph Doe.

63. Joseph Doe was disturbed and distraught over these events that persisted throughout the 2022-2023 winter.

64. Due to Joseph Doe's experience reporting bad behavior to defendant McQuaid and having no meaningful response from it, Joseph Doe did not immediately make a report of his experience to defendant McQuaid or his parents.

**Impact**

65. Joseph Doe developed anxiety and depression with suicidal thoughts during the winter of 2022-2023.

66. Joseph Doe also began engaging in self harm in the form of "cutting" his thigh and arm around this same time.

67. On January 29, 2023, Joseph Doe's anxiety became so severe he experienced a panic attack even while at home with his parents.

68. In February 2023, Joseph Doe was diagnosed with anxiety and depression began taking medication prescribed by his physician in an attempt to manage his symptoms.

69. In March 2023, Joseph Doe began seeing Dr. Michael Teisl, a clinical psychologist.

70. On April 17, 2023, Joseph Doe suffered a panic attack at school so severe he was collected immediately from school by his parents.

71. On April 17, 2023, while picking up Joseph Doe from school, plaintiffs met with Ms. Gorton.

72. Plaintiffs reported to Ms. Gorton Joseph Doe was having difficulty engaging in his education because of the other students' behaviors toward him.

73. Plaintiffs requested defendant McQuaid's help in ensuring Joseph Doe could continue to access his educational program while struggling with depression and anxiety caused by his peers' harassment.

74. When plaintiffs shared the information in paras. 72-3 with Ms. Gorton, defendant McQuaid had actual notice of peer-to-peer harassment.

75. Ms. Gorton's only response to this notice was to suggest Joseph Doe speak to Dr. Parks.

76. Recommending Joseph Doe, a minor, experiencing depression and anxiety, contact another defendant McQuaid administrator if he wanted the school to address the peer harassment he was experiencing is tantamount to defendant McQuaid taking no action at all.

77. Upon information and belief, Ms. Gorton did not follow up with Dr. Parks to inquire whether Joseph Doe spoke with him.

78. On April 18, 2023, Joseph Doe, now recognizing he could not rely on defendant McQuaid to protect him from its students' harassment, quit the defendant McQuaid baseball team, removing himself from a sport he loved, to protect himself against further harassment.

79. On April 26, 2023, Ms. Gorton followed up on the meeting held on April 17, 2023, to discuss the challenges Joseph Doe was having.

80. This same day, Mrs. Doe sent to Ms. Gorton a list of strategies Joseph Doe's physician shared that could be implemented by Joseph Doe if he were struggling in any given moment.

81. That same day, Ms. Gorton acknowledged Dr. Mike Teisl had already called and told defendant McQuaid he had a release allowing him to speak with the school about Joseph Doe's needs.

82. Ms. Gorton, however, indicated defendant required plaintiffs to sign its form, in addition to the form plaintiffs had already provided to Dr. Teisl.  Plaintiffs did fill out and return this form.

83. On May 8, 2023, Joseph Doe called his parents from school and asked to be picked up saying he was struggling with being at school.

84. Joseph Doe did not attend school on May 10, 2023.

85. On May 11, 2023, Joseph Doe had a panic attack on the way home from a physician's appointment.

86. This same day Mobile Crisis (emergency mental health services) responded to plaintiffs' home regarding a call from the family made requesting assistance.

87. As part of its response, a safety plan was created by Mobile Crisis. A copy of this plan is included at Exhibit 3.

88. That same day, Joseph Doe dictated to Mrs. Doe a list of concerns he had about his experience at defendant McQuaid.

89. After receiving this information from her son, Mrs. Doe contacted Dr. Parks, requesting a meeting to discuss "bullying" at school, on the baseball team, and Joseph Doe's witnessing general negative behavior by his defendant McQuaid peers.

90. On May 12, 2023, Joseph Doe and his parents met with Dr. Parks and Ms. Gorton.

91. During this meeting Joseph Doe presented Dr. Parks and Ms. Gorton with the document Mrs. Doe and Joseph Doe had created on May 11, 2023, outlining his experiences of

harassment at defendant McQuaid, specifically explaining one of his harassers had touched him.  *See* Exhibit 4.

92.    Dr. Parks refused to take the document from Joseph Doe, telling Joseph Doe he wanted to be able deny Joseph Doe's sharing the information with him.

93.    Dr. Parks' statement implied his understanding social consequences would result for Joseph Doe if other students knew Joseph Doe reported his peers' behavior.

94.    Nevertheless, Joseph Doe reported the behaviors he experienced, describing an environment riddled with sexual harassment and bullying.

95.    In response, both Dr. Parks and Ms. Gorton acknowledged the behaviors Joseph Doe reported were "nothing new" and stated they had attempted to deal with the behaviors before.

96.    Ms. Gorton acknowledged that additional strategies, beyond the one-time brief discussion during ninth grade orientation, may be warranted.

97.    Dr. Parks acknowledged Joseph Doe was more mature than his peers and suggested Joseph Doe wait out the behavior by telling Joseph Doe that by eleventh (11th) grade Joseph Doe's experience would be better because all the boys will have gone on a retreat together by then.

98.    Dr. Parks also recommended Joseph Doe not let the actions of others affect his experience at defendant McQuaid.

99.    Given Joseph Doe's experience at defendant McQuaid was indivisibly tied to the negative actions of others, Dr. Parks recommendation made clear to Joseph Doe that defendant McQuaid viewed his experience as a situation Joseph Doe needed to think about differently, rather than a problem defendant McQuaid needed to address.

100. At no time during this meeting did Dr. Parks or Ms. Gorton ask Joseph Doe any clarifying questions regarding the harassment he experienced and witnessed.

101. Despite Joseph Doe disclosing he was being touched by Student 7, no one asked Joseph Doe to describe where on his body Student 7 had touched him.

102. Upon information and belief, defendant conducted no investigation into Joseph Doe's allegations at the time he made the report.

103. No information was provided to plaintiffs regarding the process defendant would follow in response to their complaint.

104. At the end of the meeting, Ms. Gorton took the paper outlining Joseph Doe's various concerns from Joseph Doe and made a copy of it, giving the original back to Joseph Doe

105. Also, prior to this meeting Mrs. Doe emailed Ms. Gorton the Safety Plan created by mobile crisis.  *See* Exhibit 3.

### Post Report Impact

106. Defendant McQuaid's lackluster response to plaintiffs' report of harassment and bullying exasperated Joseph Doe's disabling medical condition.

107. On May 23, 2023, Joseph Doe began to experience significant anxiety while in math class and went to the nurse's office.

108. The nurse gave Joseph Doe medication prescribed by Joseph Doe's physician to help in times of anxiety and told Joseph Doe to lay down.

109. The nurse left Joseph Doe alone in a small, dark room within the nurse's office for around an hour after taking the medication.

110. While in the small dark room, Joseph Doe contacted Mobile Crisis and sent several texts to his father explaining he was struggling, and he needed Mr. Doe to come and get him.

111. In response, Mr. Doe contacted Ms. Gorton and asked her to check on Joseph Doe in the nurse's office because he should not be left alone.

112. Mr. Doe then left to drive to defendant McQuaid to get Joseph Doe, a 20–30-minute trip one way.

113. Ms. Gorton did check on Joseph Doe, turning on the light and coming into the room. Ms. Gorton offered Joseph Doe the opportunity to talk about what was going on and Joseph Doe declined.

114. Ms. Gorton later reported Joseph Doe was offered the opportunity to come and meet with her, but he declined and seemed quite content to be laying down with the lights off in the nurse's office.

115. Both before and after Ms. Gorton left, Joseph Doe made multiple suicide attempts by strangulation with a tie.

116. Joseph Doe also went into the nurse's bathroom where he wrote a suicide note and continued to attempt suicide.

117. Unsuccessful in his efforts, Joseph Doe threw the tie on the ground in the nurse's office and awaited Mr. Doe's arrival.

118. Upon information and belief, neither Ms. Gorton, nor the nurse, utilized the grounding activities tool resource designed assist Joseph Doe in times of crisis despite this document being sent to Ms. Gorton by Mrs. Doe on April 26, 2023.

**Disclosure**

119. On May 24, 2023, Joseph Doe's anxiety and depression was so severe he was unresponsive.  Joseph Doe spent the day in bed and did not attend school.

120. On May 25, 2023, Joseph Doe explained to his parents Student 7 touched his inner thigh and groin during technology class at defendant McQuaid.

121. That same, day Mr. Doe requested a meeting with defendant be held as soon as possible.

122. Plaintiffs met with Mr. Baber, Ms. Gorton, and Mr. John Serafine, Director of Student Counseling and College Advisement, on May 26, 2023, and reported Student 7's touching Joseph Doe's inner thigh and genitals.

123. While Mr. Baber, Ms. Gorton, and Mr. Serafine expressed concern regarding the allegations, no information was provided to plaintiffs regarding how defendant would investigate or respond to their allegations.

124. After the meeting Mr. Baber sent an email to plaintiffs to inform them he had called Brighton Police and plaintiffs should expect outreach soon.

125. Upon information and belief defendant conducted no investigation into plaintiffs' complaint.

126. Plaintiffs did meet with Brighton Police Department Investigator, Steve Hunt, and cooperated fully in Investigator Hunt's investigation.

127. Joseph Doe did not return to defendant McQuaid after this May 26, 2023, meeting.

128. On June 13, 2023, Investigator Hunt informed plaintiffs no criminal charges would be brought against Student 7 or any other defendant McQuaid Students, however, plaintiffs should expect to hear from defendant McQuaid regarding how the school intended to address the behaviors Joseph Doe experienced.

129. On June 15, 2023, Investigator Hunt contacted plaintiffs informing them that they would be getting a call from defendant McQuaid to set up a meeting.

130. Plaintiffs were not contacted by defendant McQuaid to set up a meeting.

131.  On June 19, 2023, Investigator Hunt checked in with plaintiffs to see if a meeting with defendant McQuaid had been scheduled yet.  None had.

132.  On June 23, 2023, Investigator Hunt again inquired whether a meeting had been arranged and Mr. Doe informed him that still, no one from defendant McQuaid had reached out to schedule a meeting.

133.  On June 29, 2023, Mr. Doe emailed Dr. Parks, Ms. Gorton, Mr. Baber and Mr. Serafine to inquire about the meeting Investigator Hunt had promised defendant McQuaid was arranging.

134.  In response to his email, Mr. Doe received an out of office message from Dr. Parks indicating he was out of the office until August, as well as an email from Mr. Baber explaining he could not meet with plaintiffs until after July 17, 2023.

135.  Mr. Baber suggested Mr. Serafine (now Interim Principal for defendant McQuaid) could meet with plaintiffs without him (nor any of the other individuals plaintiffs requested to meet with).

136.  No meeting was ever arranged or held.

137.  In or around the end of July 2023, plaintiffs informed defendant Joseph Doe would not return to defendant McQuaid.


**FIRST CAUSE OF ACTION**
**Deliberate Indifference Sexual Harassment**
**in Violation of Title IX, 20 USC § 1681, et seq.**
**(April 17, 2023 Report)**

138.  Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

139. Defendant McQuaid is an educational institution which receives federal financial assistance from the United States government and is subject to Title IX.

140. Joseph Doe experienced harassment because of his sex, gender, sexual orientation, and/or perceived sexual orientation, that was so severe, pervasive, and objectively offensive that it deprived him of access to the educational opportunities and/or benefits provided by defendant McQuaid as more fully described above.

141. The harassment Joseph Doe experienced occurred in a context subject to defendant McQuaid's control and where defendant McQuaid could have taken remedial action.

142. Defendant McQuaid had actual notice of sex harassment experienced by Joseph Doe because plaintiffs reported the harassment to defendant McQuaid employees on April 17, 2023, as more fully described above.

143. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was grossly insufficient.

144. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was clearly unreasonable in light of the known circumstances and tantamount to no response at all.

145. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was, therefore, deliberately indifferent.

146. As a direct and proximate result of defendant McQuaid's failure to respond appropriately to plaintiffs' reports of sexual harassment, plaintiffs were harmed.

147. As a direct and proximate result of defendant McQuaid's deliberately indifferent response to its actual notice of sexual harassment, plaintiffs suffered economic and non-economic damages including but not limited to a loss of educational opportunities,

medical costs, severe emotional distress, psychological injury, and mental anguish; degradation; and embarrassment.

148. Plaintiffs are entitled to economic and non-economic damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**Deliberate Indifference Sexual Harassment
in Violation of Title IX, 20 USC § 1681, et seq.
(May 12, 2023 Report)**

149. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

150. Defendant McQuaid is an educational institution which receives federal financial assistance from the United States government and is subject to Title IX.

151. Joseph Doe experienced harassment because of his sex, gender, sexual orientation, and/or perceived sexual orientation, that was so severe, pervasive, and objectively offensive that it deprived him of access to the educational opportunities and/or benefits provided by defendant McQuaid as more fully described above.

152. The harassment Joseph Doe experienced occurred in a context subject to defendant McQuaid's control and where defendant McQuaid could have taken remedial action.

153. Defendant McQuaid had actual notice of sex harassment experienced by Joseph Doe because plaintiffs reported the harassment to defendant McQuaid employees on May 12, 2023 as more fully described above.

154. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was grossly insufficient.

155. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was clearly unreasonable in light of the known circumstances and tantamount to no response at all.

156. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was, therefore, deliberately indifferent.

157. As a direct and proximate result of defendant McQuaid's failure to respond appropriately to plaintiffs' reports of sexual harassment, plaintiffs were harmed.

158. As a direct and proximate result of defendant McQuaid's deliberately indifferent response to its actual notice of sexual harassment, plaintiffs suffered economic and non-economic damages including but not limited to a loss of educational opportunities, medical costs, severe emotional distress, psychological injury, and mental anguish; degradation; and embarrassment.

159. Plaintiffs are entitled to economic and non-economic damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

### THIRD CAUSE OF ACTION

**Deliberate Indifference Sexual Harassment
in Violation of Title IX, 20 USC § 1681, et seq.
(May 26, 2023 Report)**

160. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

161. Defendant McQuaid is an educational institution which receives federal financial assistance from the United States government and is subject to Title IX.

162. Joseph Doe experienced harassment because of his sex, gender, sexual orientation, and perceived sexual orientation, that was so severe, pervasive, and objectively offensive that

it deprived him of access to the educational opportunities and/or benefits provided by defendant McQuaid as more fully described above.

163. The harassment Joseph Doe experienced occurred in a context subject to defendant McQuaid's control and where defendant McQuaid could have taken remedial action.

164. Defendant McQuaid had actual notice of sex harassment experienced by Joseph Doe because plaintiffs reported the harassment to defendant McQuaid employees on May 26, 2023, as more fully described above.

165. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was grossly insufficient.

166. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was clearly unreasonable in light of the known circumstances and tantamount to no response at all.

167. Defendant McQuaid's response to plaintiffs' reports of sexual harassment was, therefore, deliberately indifferent.

168. As a direct and proximate result of defendant McQuaid's failure to respond appropriately to plaintiffs' reports of sexual harassment, plaintiffs were harmed.

169. As a direct and proximate result of defendant McQuaid's deliberately indifferent response to its actual notice of sexual harassment, plaintiffs suffered economic and non-economic damages including but not limited to a loss of educational opportunities, medical costs, severe emotional distress, psychological injury, and mental anguish; degradation; and embarrassment.

170. Plaintiffs are entitled to economic and non-economic damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**Hostile Environment Sex Discrimination**
**In Violation of Title IX, 20 USC § 1681, et seq.**

171. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

172. Defendant McQuaid encourages an environment where sexual harassment is permitted in a variety of ways, including but not limited to

    A. defendant McQuaid employees excusing/dismissing students' allegations of sexual harassment as more fully described above.

    B. defendant McQuaid employees repeatedly telling students they should ignore harassing behaviors as more fully described above.

173. Failing to investigate allegations of sexual harassment as more fully described above.

174. Creating a dress code based upon gender stereotypes as more fully described in above.

175. Defendant McQuaid's failure to appropriately respond to sexual harassment within its educational program and activities has created a hostile environment for men who do not conform to gender stereotypes, for allies and member of the LGBTQ community, and for individuals perceived to be a member of the LGBTQ community, including Joseph Doe.

176. Joseph Doe experienced sexual harassment as more fully described above.

177. Joseph Doe feared ongoing retaliation and did not feel safe on campus.

178. Joseph Doe subjectively perceived the environment at defendant McQuaid to be hostile or abusive.

179. The environment was objectively hostile or abusive and permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the terms of educational environment.

180.   Because of the sexual harassment Joseph Doe endured and because of
defendant McQuaid's failure to address it, Joseph Doe was forced to leave
defendant McQuaid's education program, while the perpetrators of his harassment
experienced no interruptions to their studies.

181.   After reporting sexual harassment, Joseph Doe was subject to further harassment as more
fully described above.

182.   The conditions of Joseph Doe's education was effectively and significantly altered.

183.   Joseph Doe left defendant McQuaid's educational program because of the hostile
environment he experienced.

184.   As a direct and proximate result of defendant McQuaid's deliberately indifferent
response to its actual notice of sexual harassment, plaintiffs suffered economic and non-
economic damages including but not limited to a loss of educational opportunities,
medical costs, severe emotional distress, psychological injury, mental anguish,
degradation, and embarrassment.

185.   Plaintiffs are entitled to economic and non-economic damages in an amount to be
determined at trial, plus prejudgment interest and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION

**Sexual Harassment in Violation of
New York Human Rights Law**

186.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing
paragraphs as though fully set forth herein.

187.   Defendant McQuaid is an "educational institution" as defined by New York State Human
Rights Law.

188. Joseph Doe suffered harassment because of his sex/gender/sexual orientation/perceived sexual orientation as more fully described above.

189. Defendant McQuaid knew about the sexual harassment Joseph Doe experienced and did nothing to prevent or stop it.

190. Defendant permitted the sexual harassment Joseph Doe experienced.

191. The previously mentioned acts by defendant McQuaid violated Joseph Doe's rights under New York State Human Rights Law.

192. As a result of defendant McQuaid's actions, conduct, and omissions, including but not limited to those described above, defendant McQuaid permitted harassment of Joseph Doe because of his sex/gender/sexual orientation/perceived sexual orientation.

193. The harm plaintiffs experienced was proximately caused by defendant McQuaid's acts and/or omissions.

194. Defendant McQuaid's acts and/or omissions proximately caused plaintiffs to suffer economic and non-economic damages including but not limited to a loss of educational opportunities, medical costs, severe emotional distress, psychological injury, and mental anguish, degradation, and embarrassment.

195. Plaintiffs are therefore entitled to monetary damages, punitive or exemplary damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

### Negligent Supervision
### (Peer Sexual Harassment)

196. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

197. Defendant McQuaid has a duty to provide adequate supervision of its students.

198. Defendant McQuaid failed to exercise proper supervisory care when it repeatedly permitted Student 7 to harass Joseph Doe during technology class at times when a teacher was present, as more fully described above.

199. Defendant McQuaid had specific knowledge of Student 3, Student 7, and Student 8's propensity to engage in harassing behaviors because they had received previous reports of those students engaging in harassment on the basis of identity, as more fully described above.

200. Defendant McQuaid's specific knowledge of Student 3, Student 7, and Student 8's propensity to engage in harassing behavior is also evidenced by Dr. Parks and Ms. Gorton acknowledging they had heard similar reports of bad behavior before as more fully described above.

201. Student 7 and Student 8's subjecting another student to similar sexually harassing behaviors was foreseeable to defendant.

202. Student 7 and Student 8 did subject another student, Joseph Doe to sexual harassment as more fully described above.

203. Plaintiffs were injured as a result of Student 7 and Student 8's harassment, as more fully described above.

204. Plaintiffs' injuries resulting from Student 7 and Student 8's harassment were foreseeable to defendant.

205. Plaintiffs' injuries were proximately caused by defendant's breach of its duty to supervise.

206. Defendant McQuaid's employees' acts and/or omissions proximately caused plaintiffs to suffer economic and non-economic damages including but not limited to a loss of educational opportunities, medical costs, severe emotional distress, psychological injury, and mental anguish; degradation; and embarrassment.

## SEVENTH CAUSE OF ACTION

### Negligent Supervision
### (May 23, 2023 Incident)

207. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

208. Defendant McQuaid has a duty to provide adequate supervision of its students while they are in defendant's custody.

209. Defendant McQuaid breached this duty when it failed to adequately supervise Joseph Doe while he was in the nurse's office on May 23, 2023.

210. Specifically, the school nurse left Joseph Doe alone in a small, dark room for over an hour while he was suffering from anxiety and depression.

211. Additionally, after leaving the small, dark room the school nurse allowed Joseph Doe to remain in the bathroom within the nurse's office for over fifteen minutes.

212. Defendant knew Joseph Doe was a person with depression, anxiety, and suicidal thoughts on May 23, 2023, because Mrs. Doe shared this information on or around April 17, 2023, as more fully described above.

213. Mr. Doe also informed defendant Joseph Doe shouldn't be left alone during his phone call to Ms. Gorton on May 23, 2023.

214. While alone, Joseph Doe attempted to kill himself as more fully described above.

215. Plaintiffs experienced significant emotional distress because of Joseph Doe's attempted suicide.

216. Defendant McQuaid's employees' acts and/or omissions proximately caused plaintiffs to suffer economic and non-economic damages including but not limited to a loss of educational opportunities, medical costs, severe emotional distress, psychological injury, and mental anguish; degradation; and embarrassment.

217. Plaintiffs are entitled to economic and non-economic damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### Negligence

218. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

219. Defendant McQuaid took affirmative steps to supervise and control students reporting sexual harassment through its articulation of policies regarding the same published in its Student Handbook and disseminated to plaintiffs.

220. Defendant McQuaid's policies regarding sexual harassment:

   A. promised its students defendant McQuaid would not tolerate sexual harassment. *See* Exhibit 1, pg. 24;

   B. encouraged its students, including plaintiffs, to report sexual harassment to defendant McQuaid. *See* Exhibit 1, pg. 24;

   C. promised its students that if the facts support the complaint, immediate action will be taken, including, but not limited to, discipline, warning, suspension, or dismissal of the offending student. *See* Exhibit 1, pg. 24.

221.  These promises made by defendant McQuaid to its students through its policies created a special duty defendant McQuaid owed to its students.

222.  At the time plaintiffs reported sexual harassment to defendant McQuaid the relationship between defendant McQuaid and plaintiffs was no longer identical to defendant McQuaid's relationships with all students; instead, defendant McQuaid owed plaintiffs a special duty to respond to their reports of harassment with the appropriate standard of care.

223.  Defendant McQuaid breached the duty it owed to plaintiffs when it failed to appropriately respond to plaintiffs' reports of sexual harassment by, for example,

   A.  Failing to follow its policies and/or procedures related to reporting sexual harassment required by federal law.

   B.  Failing to provide any plaintiffs information regarding the process which would follow their complaints as more fully described above.

   C.  Failing to investigate plaintiffs' April 17, 2023 report as more fully described above.

   D.  Failing to investigate plaintiffs' May 12, 2023 report as more fully described above.

   E.  Failing to investigate plaintiffs' May 26, 2023 complaint as more fully described above.

224.  Defendant McQuaid's acts and/or omissions proximately caused plaintiffs to suffer economic and non-economic damages including but not limited to a loss of educational opportunities, tuition fees, medical costs, severe emotional distress, psychological injury, and mental anguish, degradation, and embarrassment.

225. Plaintiffs are entitled to economic and non-economic damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

## NINTH CAUSE OF ACTION

### Breach of Contract

226. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

227. Defendant McQuaid entered a contract with plaintiffs to provide educational opportunities and experiences to them in consideration of payment of tuition to defendant McQuaid.

228. Plaintiffs fulfilled their obligations to defendant pursuant to the contract.

229. Defendant McQuaid did not fulfill its obligations to plaintiffs pursuant to the contract.

230. Through its contract, defendant McQuaid promised:

    A.  it would not tolerate sexual harassment.

    B.  if plaintiffs report sexual harassment defendant McQuaid would investigate their complaints.

    C.  if the facts support the complaint, immediate action would be taken, including, but not limited to, discipline, warning, suspension or dismissal of the offending student or employee.

231. Plaintiffs fulfilled their obligations under the contract.

232. Plaintiffs relied upon their contracts with defendant McQuaid.

233. Defendant McQuaid's breach of this contract was egregious.

234. Defendant McQuaid's actions, conduct, and omissions proximately caused plaintiffs to suffer damages including but not limited to loss of tuition paid and consequential

damage, together with punitive or exemplary damages, in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

235. Plaintiffs are therefore entitled to monetary damages, punitive or exemplary damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

**TENTH CAUSE OF ACTION**

**Breach of Covenant of Good Faith and Fair Dealing**

236. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

237. The covenant of good faith and fair dealing is implied in every contract.

238. In determining if there was a breach of the implied covenant of good faith and fair dealing, the essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain.

239. Based on the foregoing facts, defendant McQuaid breached and violated the duty of good faith and fair dealing implied in its contracts with plaintiffs for all the reasons set forth above, including by, inter alia, failing to provide plaintiffs with a full and fair investigatory and adjudicatory process in response to their reports of harassment.

240. As a direct, proximate, and foreseeable consequence of these breaches, plaintiffs have sustained significant damages.

241. As a result of the foregoing, plaintiffs are entitled to recover damages in an amount to be determined at trial, plus prejudgment interest and attorney fees and costs.

**ELEVENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

242. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

243. Defendant McQuaid's conduct in failing to appropriately respond to plaintiffs' reports of harassment constitutes extreme and outrageous conduct including, but not limited to,

    A.  ignoring plaintiffs' reports of harassment as more fully described above.

    B.  ignoring plaintiffs' request that Joseph Doe have direct supervision.

244. When defendant McQuaid's employees engaged in the actions described above, defendant McQuaid disregarded a substantial probability of those actions causing plaintiffs' severe emotional distress.

245. Defendant McQuaid's actions did cause each plaintiff to suffer severe emotional distress.

246. Defendant McQuaid's actions, conduct, and omissions proximately caused plaintiffs to suffer economic and non-economic damages including but not limited to a loss of educational opportunities, severe emotional distress, psychological injury, and mental anguish; degradation, and embarrassment.

247. As a result of the foregoing, plaintiffs are entitled to recover damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

**TWELFTH CAUSE OF ACTION**

**Estoppel and Reliance**

248. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

249. Defendant McQuaid's policies and procedures constitute representations and promises that defendant McQuaid expected or should have reasonably expected would induce action or forbearance by plaintiffs.

250. Defendant McQuaid expected or should have expected plaintiffs to accept defendant McQuaid's offer of admission, incur tuition and fee expenses, and choose not to attend other schools based on its express and implied promises, including that it would not tolerate sexual harassment.

251. Plaintiffs relied to their detriment on defendant McQuaid's express and implied promises and representations.

252. As a direct, proximate, and foreseeable consequence of the above-referenced conduct, Plaintiffs have sustained significant damages, including but not limited to, damages to physical well-being, emotional and psychological damages, and other direct and consequential damages.

253. As a result of the foregoing, plaintiffs are entitled to recover damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment:

(a)    in the form of compensatory, punitive, or exemplary damages in an amount to be proven at trial,

(b)    that includes such other, further, or different relief as the Court may deem just and proper, together with attorneys' fees, costs, and disbursements of the action.

Dated:  April 23, 2024
        Rochester, New York

Attorney for Plaintiffs

By: _____

J. Morgan Levy, Esq.
J. Morgan Levy Firm, PLLC
24 N. Main St., Ste. 2
Fairport, New York 14450
T: 585-678-1160
E:  morgan@jmorganlevyfirm.com