UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN AND JANE DOE, Individually, and on
behalf of the minor child, JOSEPH DOE,

      Plaintiffs,     **DECISION AND ORDER**

   v.        6:24-CV-06237 EAW

MCQUAID JESUIT,

      Defendant.

_____

## INTRODUCTION

Plaintiff John ("Mr. Doe") and Jane Doe ("Mrs. Doe"), individually, and on behalf of their minor child, Joseph Doe ("Joseph") (collectively "Plaintiffs") commenced this action asserting claims against defendant McQuaid Jesuit High School ("McQuaid"). (Dkt. 1). Presently before the Court is a motion filed by McQuaid to dismiss Plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) and to strike allegations in the amended complaint pursuant to Fed. R. Civ. P. 12(f). (Dkt. 15). For the reasons that follow, McQuaid's motion to dismiss is granted in part and denied in part, and its motion to strike is denied.

## BACKGROUND

The following facts are taken from Plaintiffs' amended complaint. (Dkt. 13). The well-pleaded facts are taken as true, as required at this stage of the proceedings.

Mr. and Mrs. Doe are the parents of Joseph. (*Id.* at 1). Joseph was a minor student who attended McQuaid beginning in August 2021 for his eighth grade year. (*Id.* at ¶ 35).

- 1 -

Joseph quickly discovered that McQuaid did not foster the promised pursuit of excellence and commitment to justice as he noticed female teachers being treated with significantly less respect than male teachers. (*Id.* at ¶ 37). In addition, Joseph observed students disrespecting teachers, cheating on assignments, vandalizing property, shoving younger students, stealing from the school and other students, regularly engaging in verbal abuse and vulgar language referencing race, sex, and sexual orientation, overtly engaging in harassment on the basis of race and perceived national origin, and making demeaning comments about body size. (*Id.* at ¶¶ 38, 40). Joseph observed other McQuaid students either ignoring this conduct or joining the abuse. (*Id.* at ¶ 41). When Joseph reported offending conduct to school employees, very little was done. (*Id.* at ¶ 43). Teachers who attempted to reprimand disruptive and offensive students were soon removed from their teaching positions. (*Id.* at ¶ 50).

In the fall of Joseph's ninth grade year, two of his McQuaid classmates began sexually harassing him during their shared technology class. (*Id.* at ¶ 52). The technology teacher allowed an informal and disruptive environment to exist in his class and as a result, students acted out. (*Id.* at ¶ 53). One student got down on hands and knees and barked like a dog at Joseph in front of the teacher, who did not address the behavior. (*Id.* at ¶ 54). Two students preyed on and attacked Joseph and due to the lack of supervision in the class, the harassment escalated. (*Id.* at ¶¶ 55, 56). One of the students repeatedly and openly approached Joseph, first by placing his hand on Joseph's shoulder and talking to him in a salacious tone, and later increased the invasiveness by routinely touching Joseph's inner thigh and groin. (*Id.* at ¶ 58). Upon information and belief, other McQuaid students took

video of one or more of these sexual harassments and/or assaults on their cell phones. (*Id.* at ¶ 59). In light of the openness of the conduct, the technology teacher must have been aware of these encounters, or else willfully ignored them. (*Id.* at ¶ 60). During that same time, Joseph began failing technology class. (*Id.* at ¶ 61).

In or around March 2023, after his technology classmate sexually harassed and assaulted Joseph repeatedly for about five months, Joseph shoved the student away, telling him he needed to stop, or Joseph would punch him. (*Id.* at ¶ 62). When Joseph confronted the student and asked why he was continuously harassing him, the student replied that another classmate had paid him to do so by offering a few dollars or snacks in exchange for the harassment. (*Id.* at ¶ 65).

Because Joseph had reported prior bad behavior to McQuaid with no meaningful response, Joseph did not immediately report his experience to McQuaid or his parents. (*Id.* at ¶ 67). Because of the harassment and abuse, Joseph developed anxiety and depression with suicidal thoughts during the winter of 2022-2023. (*Id.* at ¶ 68). At or around this same time, he also began engaging in self-harm in the form of "cutting" his thigh and arm, and in January 2023, his anxiety became so severe that he experienced a panic attack. (*Id.* at ¶¶ 69, 70).

In February 2023, Joseph was formally diagnosed with anxiety and depression and started seeing a clinical psychologist and taking prescribed medication to try to manage his symptoms. (*Id.* at ¶¶ 71, 72). On April 17, 2023, Joseph suffered a panic attack at school so severe that it was necessary for his parents to retrieve him from school. (*Id.* at ¶ 73). On that date, Plaintiffs met with McQuaid administrator Ms. Gorton and reported Joseph's

difficulty engaging in his education because of the harassment and bullying. (*Id.* at ¶¶ 74, 75). Plaintiffs specifically informed the administration of the name-calling and sexualized and homophobic comments McQuaid students made about Joseph and his body, and provided the contact information for Joseph's clinical psychologist and the medication Joseph was prescribed. (*Id.* at ¶¶ 76, 77). A request for a reasonable accommodation was made to ensure Joseph could continue to advance with his education despite his struggle with depression and anxiety caused by his peers' harassment. (*Id.* at ¶ 78). At that time, McQuaid had actual notice of the peer-to-peer harassment that was sex-based in nature. (*Id.* at ¶ 79). The only suggestion given to Plaintiffs by Ms. Gorton was that Joseph speak to another McQuaid administrator. (*Id.* at ¶ 80).

On April 18, 2023, Joseph quit the McQuaid baseball team to protect himself from further harassment by his teammates. (*Id.* at ¶ 84). Ms. Gorton did not follow-up with Plaintiffs until April 26, 2023, when she informed Mrs. Doe that Joseph's clinical psychologist called McQuaid and notified them of a release that would allow him to speak with the school as well as the need for a signature on an additional McQuaid-generated form, which Plaintiffs quickly provided. (*Id.* at ¶¶ 85, 86). Mrs. Doe also provided McQuaid with a list of strategies shared by Joseph's physician for when Josesph was struggling with anxiety or depression. (*Id.* at ¶ 87).

On May 8, 2023, Joseph called his parents and asked to be picked up from school. (*Id.* at ¶ 89). He stayed home from school on May 10, 2023, and on May 11, 2023, Joseph had a significant panic attack on the way home from a doctor's appointment. (*Id.* at ¶¶ 90, 91). The same day, 988 Mobile Crisis responded to a call from Plaintiffs' home requesting

assistance and a safety plan was created by Mobile Crisis.  (*Id.* at ¶¶ 92, 93).  Plaintiffs immediately provided McQuaid with the Safety Plan.  (*Id.* at ¶ 94).  Joseph also prepared a list of concerns he had about his experience at McQuaid and Mrs. Doe contacted McQuaid to request a meeting.  (*Id.* at ¶¶ 95, 96).

On May 12, 2023, Plaintiffs met with Dr. Parks and Ms. Gorton and Joseph informed them that he was anxious, depressed, and suicidal, and was being bullied and harassed at McQuaid.  (*Id.* at ¶¶ 97, 98).  He also presented the written list he had prepared with Mrs. Doe, but Dr. Parks refused to take the document, indicating that he wanted to be able to deny that Joseph shared the information with him.  (*Id.* at ¶¶ 99, 100).  Despite informing Dr. Parks and Ms. Gorton that he was being touched by other students, neither asked him to clarify what he meant or discussed his mental health or suicidal ideations. (*Id.* at ¶¶ 102, 103).  Dr. Parks suggested that because Joseph was more mature than his peers, he should endure the harassment until he was in 11th grade because the offending students would be gone by then.  (*Id.* at ¶ 107).  At the end of the meeting, Ms. Gorton took the paper from Joseph that outlined his concerns and examples of the harassment endured and made a copy of it before giving the original back to him.  (*Id.* at ¶ 110).  Upon information and belief, McQuaid conducted no investigation into Joseph's allegations at this time.  (*Id.* at ¶ 111).

On May 23, 2023, Joseph began to experience severe anxiety during his math class and went to the nurse's office to obtain his prescribed medication.  (*Id.* at ¶¶ 115, 116). The nurse left Joseph alone in a small, dark room within the nurse's office for around an hour after providing the medication.  (*Id.* at ¶ 117).  While in the room alone, Joseph

contacted 988 Mobile Crisis and sent several texts to his father asking him to come get him. (*Id.* at ¶ 118). Mr. Doe contacted Ms. Gorton and asked her to check on Joseph in the nurse's office as he left to drive to McQuaid. (*Id.* at ¶¶ 119, 120). While alone in the nurse's office, Joseph attempted suicide several times by trying to strangle himself with his tie. (*Id.* at ¶ 121). After receiving Mr. Doe's call, Ms. Gorton checked on Joseph but reported that he declined to speak to her and seemed content to be laying down with the lights off so she left him alone again. (*Id.* at ¶¶ 122, 123). When Ms. Gorton entered the room and turned the light on, evidence of Joseph's suicide attempt, including his tie on the ground, was apparent but Ms. Gorton did not ask any questions and left him alone again. (*Id.* at ¶ 124). Joseph attempted suicide again several more times while in the room alone and wrote a suicide note in the nurse's bathroom. (*Id.* at ¶¶ 125, 126). Upon information and belief, neither Ms. Gorton nor the nurse, utilized any of the grounding strategies intended to assist Joseph that were provided to them by Mrs. Doe on April 26, 2023. (*Id.* at ¶ 127).

On May 24, 2023, Joseph spent the day in bed due to his severe anxiety and depression and did not attend school. (*Id.* at ¶ 128). On May 25, 2023, Joseph informed his parents about his classmate's sexual assault of touching his inner thigh and groin during technology class. (*Id.* at ¶ 129). Mr. Doe demanded a meeting with McQuaid and on May 26, 2023, Plaintiffs met with Mr. Baber, Ms. Gorton, and Mr. John Serafine, McQuaid Director of Student Counseling and College Advisement. (*Id.* at ¶¶ 130, 132). Joseph informed everyone at the meeting about the details of his assault and harassment and resulting suicide attempts and mental health struggles. (*Id.* at ¶ 134). While concern was

expressed, none of the McQuaid administrators provided any information about how McQuaid would investigate the report. (*Id.* at ¶ 135). After the meeting, Mr. Baber informed Plaintiffs via email that he had called the Brighton Police Department. (*Id.* at ¶ 136). Plaintiffs met with a Brighton Police Department Investigator and cooperated with his investigation. (*Id.* at ¶ 138). Joseph never returned to McQuaid after the May 26, 2023 meeting. (*Id.* at ¶ 139). On June 13, 2023, the police investigator advised Plaintiffs that no criminal charges would be brought against any McQuaid student, but that Plaintiffs should expect to hear from McQuaid with how it intended to address the behaviors. (*Id.* at ¶ 140). But McQuaid did not contact Plaintiffs to set up a meeting. (*Id.* at ¶ 142). The investigator followed up with Plaintiffs several times to see if a meeting with McQuaid had been scheduled and was informed that McQuaid had not contacted Plaintiffs. (*Id.* at ¶¶ 143, 144). On June 29, 2023, Mr. Doe emailed McQuaid to ask about a meeting but McQuaid never ultimately held this meeting. (*Id.* at ¶¶ 145, 148). In or around the end of July 2023, Plaintiffs advised McQuaid that Joseph would not be returning to McQuaid. (*Id.* at ¶ 150).

In their amended complaint, Plaintiffs assert claims against McQuaid for deliberate indifference to sexual harassment in violation of Title IX, 20 U.S.C. § 1681, *et seq*. arising from the April 17 and May 12, 2023 reports; deliberate indifference to sexual harassment in violation of Title IX, 20 U.S.C. § 1681, *et seq*. arising from the May 26, 2023 report; hostile environment sex discrimination in violation of Title IX, 20 U.S.C. § 1681, *et seq*.; sexual harassment in violation of the New York State Human Rights Law ("NYSHRL"); negligent supervision of peer sexual harassment; violation of Section 504 of the Rehabilitation Act; failure to provide reasonable accommodation for disability in violation

of the NYSHRL; negligent supervision arising from the May 23, 2023 incident; negligence; breach of contract; breach of the covenant of good faith and fair dealing; intentional infliction of emotional distress; and estoppel and reliance. Plaintiffs seek compensatory and punitive damages, attorneys' fees, costs, and interest as damages. (*Id.* at 38).

## PROCEDURAL HISTORY

On April 23, 2024, Plaintiffs filed this action. (Dkt. 1). On June 10, 2024, McQuaid filed a motion to dismiss for failure to state a claim. (Dkt. 9). Plaintiffs amended their complaint on July 1, 2024 (Dkt. 13), and McQuaid's motion to dismiss was denied as moot (Dkt. 14). On July 16, 2024, McQuaid filed the instant motion to dismiss the amended complaint and to strike certain allegations. (Dkt. 15). Plaintiffs filed an opposition on August 16, 2024 (Dkt. 24), and on August 23, 2024, McQuaid filed its reply (Dkt. 25; Dkt. 26). The Court heard oral argument on November 15, 2024. (Dkt. 29).

## DISCUSSION

### I.    Legal Standards

As noted above, McQuaid seeks dismissal of Plaintiffs' amended complaint for failure to state a claim under Rule 12(b)(6) and asks the Court to strike certain allegations in Plaintiffs' amended complaint pursuant to Rule 12(f).

### A.    Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court

should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## B.    Rule 12(f)

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored," *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010), and "the courts should not tamper with the pleadings unless there is a strong reason for so doing," *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976);

*see also Holland v. Chase Bank USA, N.A.*, 475 F Supp. 3d 272, 275 (S.D.N.Y. July 28, 2020) ("[M]otions to strike under Rule 12(f) are generally disfavored and granted only if there is strong reason to do so." (quotation omitted)). "Resolution of a Rule 12(f) motion is left to the district court's discretion." *Equal Emp. Opportunity Comm'n v. Green Lantern Inn, Inc.*, No. 19-CV-6704-FPG-MJP, 2021 WL 4086148, at *2 (W.D.N.Y. Aug. 19, 2021) (quoting *EEOC v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004)), *report and recommendation adopted*, 2021 WL 4081109 (W.D.N.Y. Sept. 8, 2021).

## II.    McQuaid's Motion to Dismiss

### A.    Title IX

McQuaid moves to dismiss Plaintiffs' first, second, and third causes of action which each seek to assert claims pursuant to Title IX. Plaintiffs' first claim relates to the events on April 17 and May 12; the second relates to events on May 26; and the third is a claim of hostile environment for a time period which appears to span throughout Joseph's enrollment at McQuaid.

"Title IX prohibits sex discrimination by recipients of federal education funding." *Schiebel v. Schoharie Cent. Sch. Dist.*, No. 23-1080, 2024 WL 4644958, at *4 (2d Cir. Nov. 1, 2024) (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005)). Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Relief for harassment by a student's peers is available under Title IX if certain conditions are met. *Doe v. State Univ. of New York Purchase*

*Coll.*, No. 21-CV-8417 (KMK), 2024 WL 4266545, at *6 (S.D.N.Y. Sept. 23, 2024) ("One of the many Title IX theories available to a student is that 'he or she [has been] subjected to a hostile [peer] environment that constitutes discrimination on the basis of sex.'" (quoting *Roe v. St. John's Univ.*, 91 F.4th 643, 661 (2d Cir. 2024)).

"To recover against an institution for student-on-student harassment, a plaintiff must show: '(1) defendant is a Title IX funding recipient; (2) an appropriate person ha[d] actual knowledge of the discrimination or harassment the plaintiff alleges occurred; (3) the funding recipient [ ] acted with deliberate indifference to known acts of harassment; and (4) the discrimination [was] so severe, pervasive[,] and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit.'" *Id.* (quoting *Morin v. Fordham Univ.*, No. 21-CV-7909, 2022 WL 4586042, at *7 (S.D.N.Y. Sept. 28, 2022)). "The student-on-student . . . harassment forming the basis for a Title IX claim must also, of course, be 'gender-oriented.'" *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 362 (S.D.N.Y. 2017) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). Here, the parties do not dispute that McQuaid is a Title IX funding recipient and it is only the other elements that are at issue.

### 1.    Sex-Based Severe and Pervasive Harassment

As noted, in order to state a Title IX claim, "the harassment must be 'because of gender,' not simply involve gender-based terms." *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 CS, 2012 WL 4477552, at *16 (S.D.N.Y. Sept. 27, 2012) (quoting *Patenaude v. Salmon River Cent. Sch. Dist.*, No. 03-CV-1016, 2005 WL 6152380, at *5 (N.D.N.Y. Feb. 16, 2005)). In *Davis*, the Supreme Court explained that it is

"understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it," but that "[d]amages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender." *Davis,* 526 U.S. at 652. "Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Id.*; *see also Nungesser*, 244 F. Supp. 3d at 362–63 ("Harassment, 'even harassment between men and women' is not automatically considered to be gender-based discrimination 'merely because the words used have sexual content or connotations.'" (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998))); *Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 197 (D. Conn. 2016) ("Doe does not sufficiently allege that he was bullied, harassed, and assaulted because of his gender. . . .The terms 'fat ass' and 'baby,' are not associated with gender, and other courts in this Circuit have found that the terms 'pussy,' 'faggot,' and 'bitch' are also insufficient to suggest that a student was harassed on the basis of gender.").

Here, as a threshold matter, the parties did not meaningfully address whether the alleged harassment at issue can be deemed sex-based, where it was tied to Joseph's perceived sexual orientation or non-conformance with gender stereotypes. As the movant, it is McQuaid's burden to establish that Title IX relief is unavailable to Plaintiffs on the basis of Joseph's perceived sexual orientation or non-conformance with gender stereotypes and McQuaid has provided no legal authority addressing this argument nor meaningful

analysis of the issue. *See Farrell v. City of New York*, No. 1:23-CV-04329 (JLR), 2024 WL 3849333, at *7 (S.D.N.Y. Aug. 16, 2024) ("[T]he movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." (quoting *Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014))). Construing the allegations in the light most favorable to Plaintiffs, Plaintiffs have pleaded that the harassment was sex-based because of perceptions as to Joseph's sexual orientation or non-conformance with gender stereotypes, and McQuaid has failed to establish otherwise. Thus, the Court concludes that there is a sufficient basis to consider this element plausibly alleged. *See Est. of D.B. by Briggs v. Thousand Islands Cent. Sch. Dist.*, 169 F. Supp. 3d 320, 333 (N.D.N.Y. 2016) (denying motion to dismiss Title IX claim based on gender stereotyping where the complaint alleged that "bullying was based on D.B.'s actual or perceived sexual orientation and his perceived and/or presumed sexual orientation." (internal citations omitted)), *abrogated on other grounds by Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195 (2d Cir. 2017); *see also Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1118 (9th Cir. 2023) ("In sum, we hold that discrimination on the basis of perceived sexual orientation is actionable under Title IX."); *Doe v. Indep. Blue Cross*, 703 F. Supp. 3d 540, 547 (E.D. Pa. 2023) ("Discrimination based on gender stereotyping and an individual's degree of conformity with such stereotyping is actionable [under Title IX].");  *Gililland v. Sw. Oregon Cmty. Coll. Dist. by & through Bd. of Educ.*, No. 6:19-CV-00283-MK, 2021 WL 5760848, at *6 (D. Or. Dec. 3, 2021) ("To the extent Defendants urge this court to conclude that gender stereotypes are either not appropriately considered under Title IX discrimination analysis, or that such gender stereotypes should be narrowly framed, they are mistaken. 'It

is undisputed that Title IX forbids discrimination on the basis of gender stereotypes.'" (quoting *Videckis v. Pepperdine Univ.*, 150 F. Supp. 3d 1151, 1160 (C.D. Cal. 2015))); *see generally* 89 Fed. Reg. 33474, 33476 (April 29, 2024) (recent amendments to Title IX regulations "[c]larify that sex discrimination includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity").

As to severity, McQuaid argues that the students' alleged actions were not sufficiently severe and pervasive because the comments were more in the nature of insults and banter that did not rise to the level of an actionable Title IX claim.  But the incidents must be considered collectively in order to determine whether the requisite severity has been met.  *Est. of D.B. by Briggs v. Thousand Islands Cent. Sch. Dist.*, 327 F. Supp. 3d 477, 530 (N.D.N.Y. 2018) ("In determining whether the alleged harassment meets the 'severe, pervasive, and objectively offensive' requirement, the Court view[s] . . . [the situation] as a whole . . ."  (quotation and citation omitted)); *see also Marino v. State Univ. of New York at Buffalo,* No. 23-CV-1064-JLS-LGF, 2024 WL 3541679, at *6 (W.D.N.Y. June 21, 2024) (noting that a single incident of student-on student harassment generally will not satisfy the requirement of severe, pervasive, and objectively offensive unless it is an extreme incident such as rape), *report and recommendation adopted*, 2024 WL 3541065 (W.D.N.Y. July 25, 2024).

For student-on-student harassment to be deemed sufficiently severe and pervasive, "the behavior [must be] so severe, pervasive, and objectively offensive that it denies the victim equal access to education."  *Cianciotto on behalf of D.S. v. New York City Dep't of*

*Educ.*, 600 F. Supp. 3d 434, 451-52 (S.D.N.Y. 2022) (quotation and citation omitted)). "For a court to find that harassment denied a student access to educational resources and opportunities, the 'harassment must have [had] a concrete negative effect on the victim's education, which may include dropping grades, becoming homebound or hospitalized due to harassment, physical violence, or physical exclusion from a school resource.'" *Doe v. New York City Dep't of Educ.*, No. 22-CV-07773 (OEM) (RML), 2024 WL 3553435, at *3 (E.D.N.Y. July 26, 2024) (quoting *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013)).

Here, Plaintiffs contend that Joseph faced homophobic and sexualized statements about his perceived sexual orientation and failure to conform to gender stereotypes on an systemic and ongoing basis over many months, including unwanted touching of his inner thigh, shoulder, and groin area, while other students in the classroom recorded it on their phones. They allege that these incidents resulted in Joseph's grades dropping (Dkt. 13 at ¶ 61); diagnoses of anxiety, depression, and panic attacks (*id.* at ¶¶ 68-70); attempts to self-harm (*id.* at ¶ 121); and ultimately, his decision to withdraw from McQuaid (*id.* at ¶ 150). For purposes of a Rule 12(b)(6) motion, the Court concludes that the allegations of this element are sufficiently pleaded.

### 2.    Deliberate Indifference

McQuaid also argues that Plaintiffs have failed to allege a factual basis sufficient to sustain a showing of its deliberate indifference. As explained by the Second Circuit, to qualify as deliberately indifferent, the recipient's "response to sex discrimination must be 'clearly unreasonable' in light of known circumstances." *Schiebel*, No. 23-1080, 2024 WL

4644958, at *6 (quoting *Papelino v. Albany Coll. of Pharmacy*, 633 F.3d 81, 89 (2d Cir.

2011). In conducting this assessment, the Court must evaluate both "the timeliness [and

the] nature of the response." *Id.* (quoting *Hayut v. State Univ. of New York*, 352 F.3d 733,

751 (2d Cir. 2003)). Deliberate indifference can be established by demonstrating that a

party failed to investigate the complaint or stop the harassment or that the response only

occurred after unnecessary delay. *Id.*; *see also Castro v. Yale Univ.*, 518 F. Supp. 3d 593,

609 (D. Conn. 2021) ("Plaintiffs suing under Title IX must also demonstrate that the

educational program or activity was deliberately indifferent to the alleged discrimination,

meaning that a school official with authority to address the alleged discrimination and to

institute corrective measures had actual knowledge of the discrimination and failed to

adequately respond." (quotation and citation omitted)); *Posso v. Niagara Univ.*, 518 F.

Supp. 3d 688, 697 (W.D.N.Y. 2021) ("A defendant acts with deliberate indifference for

Title IX purposes 'when the defendant's response to known discrimination is *clearly*

unreasonable in light of the known circumstances.'" (quoting *Roskin-Frazee v. Columbia*

*Univ.*, 17 Civ. 2032 (GBD), 2018 WL 6523721, at *4 (S.D.N.Y. Nov. 26, 2018)).

Deliberate indifference "must, 'at a minimum, cause students to undergo harassment or

make them liable or vulnerable to it.'" *Doe v. St. Lawrence Univ.*, No. 8:23-CV-00426

(BKS/DJS), 2024 WL 1116454, at *21 (N.D.N.Y. Mar. 14, 2024) (quoting *KF ex rel. CF*

*v. Monroe Woodbury Centr. Sch. Dist.*, No. 12-cv-2200, 2013 WL 177911, at *6 (S.D.N.Y.

Jan. 16, 2013)). Notably, "[d]eliberate indifference is 'often a fact-laden question, for

which bright lines are ill-suited.'" *Id.* (quoting *Tesoriero v. Syosset Centr. Sch. Dist.*, 382

F. Supp. 2d 387, 398 (E.D.N.Y. 2005)); *Cianciotto on behalf of D.S. v. New York City*

*Dep't of Educ.*, 600 F. Supp. 3d 434, 452 (S.D.N.Y. 2022) (noting that a determination of deliberate is fact-based and "is ill-suited for disposition on a motion to dismiss").

Actual knowledge of the discrimination "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 397 (E.D.N.Y. 2005) (quotation and citation omitted). Rather, "K-12 schools have actual knowledge when notice is provided to any employee . . . [and] results whenever any elementary and secondary school employee, any Title IX Coordinator, or any official with authority: Witnesses sexual harassment; hears about sexual harassment or sexual harassment allegations from a complainant (i.e., a person alleged to be the victim) or a third party (e.g., the complainant's parent, friend, or peer); receives a written or verbal complaint about sexual harassment or sexual harassment allegations; or by any other means." *New York v. United States Dep't of Educ.*, 477 F. Supp. 3d 279, 291 (S.D.N.Y. 2020).

McQuaid contends that Plaintiffs have not adequately pleaded that it had actual knowledge of the harassment and was deliberately indifferent in a manner that can sustain a Title IX claim. The Court disagrees.

With respect to their first claim, Plaintiffs contend that in addition to the actual notice that McQuaid had arising from the repetitiveness and openness of the conduct as it occurred, on April 17, 2023 and May 12, 2023, Plaintiffs made specific reports to McQuaid about the sex-based harassment and abuse endured by Joseph. They allege that at the May 12, 2023 meeting, Joseph specifically stated that he had been "touched" by a fellow student. Notwithstanding their providing McQuaid with actual knowledge, Plaintiffs allege that

McQuaid ignored the reports, failed to investigate the claims or ask additional questions, refused to punish responsible parties, and neglected to provide supports for Joseph to permit him to continue accessing his education program.  Plaintiffs contend that this inaction constituted an unreasonable response to the harassment and establishes deliberate indifference.  Likewise, in their second claim, Plaintiffs allege that on May 26, 2023, Joseph reported the severe and pervasive sex-based harassment that specifically included sexual touching of his groin area.  They allege that McQuaid failed to properly investigate the reported allegations and that McQuaid's contacting the police did not obviate the need for further investigation or remedial measures.  They allege that McQuaid failed to keep them informed as to the nature of their investigation or provide adequate supports or protections that would have enabled Joseph to return to McQuaid, amounting to deliberate indifference to the harassment.  Whether and if McQuaid's actions were reasonable under the circumstances is not one that the Court can resolve on the instant motion.

In sum, because the Court's review is confined to the facts alleged in the amended complaint, and it must draw all reasonable inferences in Plaintiffs' favor, the Court concludes Plaintiffs' allegations are sufficient to plausibly allege deliberate indifference.

### 3. Title IX Hostile Environment

Finally, to the extent that Plaintiffs' third Title IX claim is based on a theory of hostile environment, it survives McQuaid's motion for similar reasons.  Title IX "indirectly prohibits sexual harassment on the basis that harassment can be a form of sex discrimination when it leads to a hostile environment, which then impedes one's access to the benefits of an educational program." *Marciniak-Domingues v. Massachusetts Inst. of*

*Tech.*, No. 1:22-CV-10959 (ALC) (SN), 2024 WL 4350826, at *8 (S.D.N.Y. Sept. 30, 2024) (quoting *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 307 (S.D.N.Y. 2018)). "Making a 'hostility' determination in the educational context, as in the employment context, entails examining the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with' the victim's academic performance." *Doe v. Sarah Lawrence Coll.*, 453 F. Supp. 3d 653, 666 (S.D.N.Y. 2020) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)). "Accordingly, a school may be liable for sexual harassment if it allows a hostile environment to persist when a school knows about severe or pervasive harassment and fails to immediately take steps to quell it." *Marciniak-Domingues*, 2024 WL 4350826, at *8.

Plaintiffs allege that Joseph faced continuous and repeated instances of sex-based harassment and assault and that despite its knowledge, McQuaid ignored and dismissed Plaintiffs' concerns. They also allege that the general culture of bullying and abuse at McQuaid enabled the offending behavior to persist and resulted in Joseph's decision to not immediately report the sexual touching to McQuaid or his parents. In addition, Plaintiffs have pleaded that Joseph perceived the environment at McQuaid to be abusive and that it unreasonably interfered with his educational pursuits.

Like Plaintiffs' other Title IX claims, the Court concludes that this claim has been sufficiently pleaded. Accordingly, McQuaid's motion to dismiss Plaintiffs' Title IX claims is denied.

### B.    Abandoned/Withdrawn Claims

Although McQuaid moves to dismiss all of the claims in Plaintiffs' amended complaint, Plaintiffs did not set forth any argument in their opposition to the instant motion to contest dismissal of the following claims: violation of Section 504 of the Rehabilitation Act (sixth cause of action); failure to provide reasonable accommodation for disability in violation of the NYSHRL (seventh cause of action); breach of contract (tenth cause of action); breach of the covenant of good faith and fair dealing (eleventh cause of action); intentional infliction of emotional distress (twelfth cause of action); and estoppel and reliance (thirteenth cause of action).

"[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 20 n.4 (E.D.N.Y. 2020) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)).  Plaintiffs' failure to address McQuaid's arguments related to these claims operates as an independent basis to dismiss the claims.  *Horsting v. St. John's Riverside Hosp.*, No. 17-CV-3230, 2018 WL 1918617, at *6 (S.D.N.Y. Apr. 18, 2018) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." (quotation and citation omitted)).

At oral argument, Plaintiffs agreed that their failure to address these claims justified dismissal.  In addition, Plaintiffs expressly withdrew their claims against McQuaid pursuant to the NYSHRL.  As a result, McQuaid's motion to dismiss Plaintiffs' fourth cause of action under the NYSHRL, sixth cause of action under Section 504 of the

Rehabilitation Act, seventh cause of action under the NYSHRL, tenth cause of action for breach of contract, eleventh cause of action for breach of the covenant of good faith and fair dealing, twelfth cause of action for intentional infliction of emotional distress, and thirteenth cause of action for estoppel and reliance is granted.

### C.    Negligence and Negligent Supervision

The only remaining state-law claims are those for negligence and negligent supervision in Plaintiffs' fifth, eighth, and ninth claims. Plaintiffs' negligent supervision claim is broken into two claims: the first resulting from the harassment by Joseph's peers and the other relating to his suicide attempt in the nurse's office.

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Crout v. Haverfield Int'l, Inc*., 269 F. Supp. 3d 90, 96 (W.D.N.Y. 2017) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)). As explained by a New York appellate court:

> In determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow students, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused [the] injury; that is, that the third-party acts could reasonably have been anticipated. . . . Furthermore, the injuries sustained by a plaintiff must be proximately caused by the school's breach of its duty to provide adequate supervision. . . . At the same time, [s]chools are not insurers of safety, . . . for they cannot reasonably be expected to continuously supervise and control all movements and activities of students; therefore, schools are not to be held liable for every thoughtless or careless act by which one pupil may injure another.

*McGarvey v. Eldred Cent. Sch. Dist*., 221 A.D.3d 1114, 1115-16 (3d Dep't 2023) (internal quotations and citations omitted)); *see also AA by BB v. Hammondsport Cent. Sch. Dist.,*

527 F. Supp. 3d 501, 507 (W.D.N.Y. 2021) ("With respect to plaintiff's negligent supervision claim, it is well settled that under New York law, [s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision. . . . The attendant duty of care has been described as that of a 'reasonably prudent parent,' and as such, school personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students daily . . . absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act." (citations and quotations omitted)); *A.R. v. Bay Shore Union Free Sch. Dist.*, 219 A.D.3d 850, 850-51 (2d Dep't 2023) ("Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision. . . . A school district owes a duty to its students to exercise the same degree of care as would a parent of ordinary prudence under similar circumstances." (quotations and citations omitted)).

The gravamen of the negligence and negligent supervision claims against McQuaid are the same and arise from Plaintiffs' contention that McQuaid owed a duty of care to Joseph, as a minor student at the school, to ensure that he was adequately supervised. *See PC-41 Doe v. Poly Prep Country Day Sch.*, No. 20CV03628 (DG)(SJB), 2021 WL 4310891, at *12 (E.D.N.Y. Sept. 22, 2021) ("Starting with the duty element, it is well settled that [i]n New York, schools are under a special duty of *in loco parentis*, which obligates them to exercise such care of [their charges] as a parent of ordinary prudence would observe in comparable circumstances." (citations and quotations omitted)).

- 22 -

Plaintiffs allege that McQuaid breached that duty by not protecting Joesph from harassment and sexual assault when he was under its control, and that McQuaid knew or should have known of the propensity of Joseph's peers to engage in inappropriate behaviors and abuse and failed to properly supervise his classrooms.  Plaintiffs allege the incidents occurred out in the open at school, often with teachers or administrators present, and that even upon being informed of harassment, McQuaid did not take adequate steps to investigate and keep Joseph safe, making additional harassment foreseeable.  Plaintiffs also allege that Joseph was under McQuaid's control at the time of his attempted suicide, that ordinary prudence would warrant greater supervision, and that his attempted suicide was reasonably foreseeable.  Finally, Joseph alleges severe emotional and physical harm arising from the abuse.

Taking the allegations in Plaintiffs' amended complaint as true, as it must, the Court concludes that the claims for negligence and negligent supervision have been adequately pleaded.  McQuaid's motion to dismiss these claims is denied.

## III.   McQuaid's Motion to Strike

Finally, McQuaid moves to strike a number of allegations in Plaintiffs' amended complaint which it contends are impertinent and palpably irrelevant.  The allegations at issue are those generally relating to McQuaid's alleged "boys will be boys" philosophy or which generally reflect students' disrespect for teachers, cruelty to each other, and use of offensive and derogatory language.

As noted, motions to strike are disfavored.  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material

- 23 -

consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *Jordan v. Dep't of Correction*, No. 3:23-CV-855 (VAB), 2024 WL 4581645, at *1 (D. Conn. Oct. 25, 2024) (quoting *Brady v. Basic Rsch.*, L.L.C., 101 F. Supp. 3d 217, 225 (E.D.N.Y. 2015) (citation omitted).  "A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Id.*

Although McQuaid argues that the disputed allegations have nothing to do with the asserted claims and are an effort to smear and scandalize McQuaid, the Court disagrees. The allegations largely relate to Plaintiffs' perception of the McQuaid school culture and the information serves as a backdrop to Plaintiffs' allegations of deliberate indifference, negligence, and negligent supervision.  While the Court agrees that the allegations portray McQuaid in a poor light, it does not agree with McQuaid that they have no relation to the surviving claims asserted by Plaintiffs.  Accordingly, McQuaid's motion to strike pursuant to Rule 12(f) is denied.

## CONCLUSION

For the foregoing reasons, McQuaid's motion to dismiss is granted in part and denied in part and its motion to strike is denied.  Specifically, the motion to dismiss is denied as to Plaintiffs' claims for deliberate indifference to sexual harassment and hostile environment in violation of Title IX, 20 U.S.C. § 1681, *et seq*., and their state-law claims for negligence and negligent supervision, but granted as to Plaintiffs' claims pursuant to the NYSHRL; breach of contract; breach of the covenant of good faith and fair dealing; intentional infliction of emotional distress; and estoppel and reliance.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  November 27, 2024
        Rochester, New York